1

2

3

4

5               IN THE UNITED STATES DISTRICT COURT

6            FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8  CLIFF JOHNSTON                    )
                                     )
9            Plaintiff,              )      2:07-cv-01280-GEB-EFB
                                     )
10      v.                           )      ORDER GRANTING DEFENDANT'S
                                     )      MOTION FOR SUMMARY JUDGMENT*
11  CHARLENE LINDAUR, AKA CHARLENE   )
    MACALUSO; G & R MORTGAGE GROUP;  )
12  VALUE HOME LOAN; AMERICAN MORTGAGE;)
    and Does 1-10, Inclusive,        )
13                                   )
             Defendants.             )
14  _____ )

15      On October 6, 2009,[1] Defendant Value Home Loan ("Value") filed a

16  motion under Federal Rule of Civil Procedure 56(c) seeking summary

17  judgment on Plaintiff's remaining federal claims under the Truth in

18  Lending Act ("TILA") and the Homeowner Equity Protection Act

19  ("HOEPA").[2]  Value argues summary judgment is warranted on these

20  claims since "there is no genuine issue as to any material fact . . .

21  _____

22      *  This matter is deemed to be suitable for decision without oral
    argument.  E.D. Cal. R. 230(g).
23

24      [1]  In an order dated September 10, 2009, the court ordered that
    Defendants file a motion for summary judgment by October 2, 2009.
25  Defendant's filing on October 6 was, therefore, untimely. Nonetheless,
    in the interest of judicial economy, Defendant's motion will be
26  considered and decided.

27      [2]  Value also argues it is entitled to summary judgment on
    Plaintiff's claim under the Real Estate Settlement Procedures Act
28  ("RESPA").  However, Plaintiff's RESPA claim was dismissed at the
    hearing held on July 28, 2009. (Hearing Transcript 12:5-6.)

                                    1

.″  (Not. of Mot. for Summ. J. 1.)  Plaintiff filed no admissible evidence in opposition to the motion.  For the reasons stated below, Value's motion is GRANTED.[3]

## I.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), the party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S., 317, 323 (1986).  If the moving party satisfies this burden, "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987)(quotations and citation omitted)(emphasis omitted).  When deciding a summary judgment motion, all reasonable inferences that can be drawn from the evidence "must be drawn in favor of the non-moving party." <u>Bryan v. McPherson</u>, --- F.3d ----, 2009 WL 5064477, at *2 (9th Cir. 2009).  However, only "admissible evidence" may be considered.  <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002).

## II.   BACKGROUND

The summary judgment evidentiary record in this case is created by Value's statement of undisputed facts since Plaintiff failed to provide any admissible evidence in support of his opposition.[4]  In

---

[3]  On August 3, 2009, Plaintiff filed a document entitled "Motion or Request to Review Original Loan Documents."  Plaintiff's request is treated as a motion to compel production of documents.  Discovery in this case, however, closed on November 11, 2008.  As Plaintiff has not demonstrated good cause for amending the discovery deadline, Plaintiff's motion is denied.

[4]  On December 3, 2009, after this matter had been submitted,
(continued...)

2

1981, Plaintiff purchased a house at 3721 Orangerie Road in Carmichael, California (the "Property").  (Statement of Undisputed Facts ("SUF") ¶ 2.)  Plaintiff owned the Property continuously until February 2008, when Value foreclosed on the Property.

In January 2007, Plaintiff looked into refinancing his home mortgage.  (Id. ¶ 6.)  Plaintiff went through the phone book and called several mortgage brokers, including G & R Mortgage Company ("G & R")(Id.)  At G& R, Plaintiff worked with Paul Mixter to secure a refinancing loan.  (Id. ¶ 7; Johnston Depo. 70-71.)  Initially, Mixter tried to arrange a loan with World Savings; however, Plaintiff's loan application was denied.  (Id. ¶ 7; Johnston Depo. 73:22-23.)  Mixter then told Plaintiff Value was another potential lender.  (Id. ¶ 8; Johnston Depo. 75:8-25.)  In January 2007, Mixter sent Value Plaintiff's application for a loan.  (Id. ¶ 11.)  Mixter then informed Plaintiff that to receive a loan, Value would require that Plaintiff obtain both a first deed of trust loan as well as a home equity line of credit.  (Id. ¶ 13.)

On January 26, 2007, at G & R's office, Plaintiff signed a written application for a first deed of trust loan and a home equity line of credit from Value.  (Id. ¶ 15.)  Plaintiff admits he initialed each page of the application and signed and dated the last page of the application.  (Id.)  Value then sent the following documents to G & R: an $155,000 adjustable rate note, a first deed of trust, two copies of the notice of right to cancel the first deed of trust, two copies of the Regulation Z disclosure statement for the first deed of trust

---

4(...continued)
Plaintiff filed a "motion to amend his opposition for summary judgment." Plaintiff's filing, however, was untimely.  Further, Plaintiff's additional filing does not provide any admissible evidence.

1   loan, a home equity credit line revolving loan agreement, an important
2   terms memo, a second deed of trust for the home equity line of credit
3   and two copies of a notice of right to cancel the second deed of
4   trust. (Id. 18; Exs. 2-9.) Plaintiff testified that he signed the
5   note, first deed of trust, the notice of right to cancel the first
6   deed of trust and that "it's possible" or it "could be" his signature
7   on the Regulation Z disclosure statement, the home equity credit line
8   revolving loan agreement, and the notice of right to cancel the second
9   deed of trust. (Id. ¶ 20.) Upon receipt of these executed documents,
10  Value funded both loans on February 8, 2007. (Id. ¶ 22.) However, in
11  February 2008, Value foreclosed on its second deed of trust and the
12  Property was sold to a third party. (Id. ¶ 27.)

13      On June 26, 2007, Plaintiff filed a complaint in this federal
14  court against Defendants, alleging twenty-four claims under federal
15  and state law relating to his loans secured by his home. At this
16  time, however, only Plaintiff's federal claims brought under TILA and
17  HOEPA remain. In an order filed January 5, 2009, Plaintiff's
18  attorney's motion to withdraw was granted; since that date, Plaintiff
19  has been proceeding *pro se*.

20                        **III.  DISCUSSION**

21              **A.  Plaintiff's Claims under TILA**[5]

22      Value argues it is entitled to summary judgment on Plaintiff's
23  claims under TILA for three reasons: "[First,] Plaintiff admits he
24  received the Disclosure Statements; [second,] the uncontradicted

25  _____

26      [5]  It is not clear from Plaintiff's complaint what provisions of
27  TILA he alleges Value has violated. Value has characterized Plaintiff's
    allegations as a claim for failure to provide the statutorily required
28  disclosures and notices. Plaintiff does not seem to contest this
    characterization of his TILA claims.

evidence shows Plaintiff did in fact receive both the [d]isclosure [s]tatements and the [n]otices of right to [c]ancel for both loans; and [third,] Plaintiff's claim[] [that] he did not fully understand those documents is unavailing . . . ." (Mot. for Summ. J. 4:1-6.) Plaintiff rejoins, arguing his signature on two loan documents was forged and he therefore "believe[s] there are other signatures of [his] that could have been forged or 'copy and pasted.'"[6] (Opp'n. 2:2-6.)

**1.  Regulation Z Disclosures**

Value first argues that the summary judgment record demonstrates Plaintiff received the required Regulation Z disclosures and Plaintiff, therefore, cannot maintain a TILA claim for failure to provide such disclosures. TILA's implementing regulation, Regulation Z, 12 C.F.R. § 226, sets out TILA's disclosure requirements. See Fimbres v. Chapel Mortg. Corp., No. 09-CV-0886-IEG (POR), 2009 WL 4163332, at *8 (S.D. Cal. 2009). However, disclosure requirements mandated by TILA and Regulation Z depend upon "whether the loan in question is an 'open-end credit' transaction or a 'closed-end credit' transaction." Demarest v. Quick Loan Funding, Inc., No. CV09-01687 MMM (Ssx), 2009 WL 940377, at *3 (C.D. Cal. Apr. 6, 2009)(citation omitted). "TILA defines an open-end credit plan as a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the

---

[6]  Plaintiff argues his signature on both "Depo Exhibit 16, Modification of Note & Deed of Trust and Depo Exhibit 17, Notice of Acknowledgment of Non-Rescission" was forged. (Opp'n. 2:2-3.) However, Plaintiff has not provided these documents nor do they appear to be otherwise in the record. Further, Plaintiff has not explained how forgery of these documents would give rise to a claim under TILA.

1 outstanding unpaid balance." <u>Id.</u> (quoting 15 U.S.C. § 1602(i)). In
2 contrast, "[c]losed-end credit" is defined as "consumer credit other
3 than 'open-end credit.'" 12 C.F.R. § 226.2(a)(10).

4     The first deed of trust loan was a "closed-end credit"
5 transaction since the note provided for a single loan advance of
6 $155,000 rather than repeated extensions of credit. (Def.'s Ex. 2.)
7 For a closed-end credit transaction, Regulation Z requires that a
8 creditor make certain disclosures "clearly and conspicuously in
9 writing, in a form that the consumer may keep." 12 C.F.R. §
10 226.17(a)(1). Further, the required disclosures are to "be made
11 before the credit is extended." 12 C.F.R. § 226.17(b).

12     The uncontroverted evidence in the summary judgment record
13 demonstrates Plaintiff received the required Regulation Z disclosures
14 before consummation of the loan transaction. Value provided a copy of
15 a Regulation Z disclosure statement bearing a signature of Plaintiff's
16 name and dated January 26, 2007. (Def.'s Ex. 5.) The disclosure
17 statement includes all of the required information in the proper
18 format. (<u>Id.</u>) Plaintiff admitted in his deposition testimony that
19 "it's possible" that the signature on the Regulation Z disclosure
20 statement is his. (SUF ¶ 20.) Based on this testimony, it can be
21 inferred that the signature is Plaintiff's and he received the
22 Regulation Z disclosure document. <u>See</u> <u>Lynch v. RKS Mortg. Inc.</u>, 588
23 F. Supp. 2d 1254, 1258 (E.D. Cal. 2008)(stating that "[w]ritten
24 acknowledgment of receipt by Plaintiff[] is conclusive proof of the
25 delivery of . . . [the TILA] disclosure statement[]."); <u>see also</u> 15
26 U.S.C. § 1641(b)(codifying that written acknowledgment is conclusive
27 proof of delivery). Therefore, Value's motion for summary judgment on
28

Plaintiff's claim that Value failed to provide him with the Regulation Z disclosures for the first deed of trust loan is granted.

The home equity line of credit agreement is an "open-end credit" transaction because the loan agreement provided for repeated extensions of credit.  (Def.'s Ex. 6.)  12 C.F.R. § 226.5b prescribes the disclosure requirements under TILA for such an "open-end credit plan[] secured by the consumer's dwelling."  These disclosures must be given to the consumer at the time the loan application is provided. 12 C.F.R. § 226.5b(b).

The summary judgment record demonstrates Plaintiff signed a copy of a document entitled the "Important Terms of our Home Equity Revolving Credit Line" on January 26, 2007, the date he received his loan application.  (Def.'s Ex. 7.)  The document bears the signature of Plaintiff's name and provides the disclosures mandated by TILA. (Id.)  Plaintiff admitted in his deposition testimony that the signature on the Important Terms document "could be" his.  (SUF ¶ 20.) Based on this testimony, it can be inferred the signature is Plaintiff's and he received the required disclosures for the home equity line of credit loan.  See Lynch, 588 F. Supp. 2d at 1258 (written acknowledgment is conclusive proof of delivery).  Therefore, Value's motion for summary judgment on this claim is granted.

**2.   Notice of Right to Cancel**

Value also argues Plaintiff cannot prevail on a TILA claim premised upon failure to receive notice of the right to rescind for either of his two loans.  Under 12 C.F.R. § 226.23(b)(5), "TILA's 'buyer's remorse' provision[,] . . . borrowers [are given] three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security."  Semar v. Platte Valley Federal

Sav. & Loan Ass'n., 791 F.2d 699, 701 (9th Cir. 1986).  Lenders are required to "provide [borrowers with] a form stating the specific date on which the three-day rescission period expires." Id. (citing 12 C.F.R. § 226.23(b)(5)).  This form is referred to as the "notice of right to cancel."  See Balderas v. Countrywide Bank, N.A., No. 09cv564-MMA(JMA), 2009 WL 4783142, at *3 (S.D. Cal. Dec. 10, 2009).

     The summary judgment record reveals Plaintiff received a notice of right to cancel that included the statutorily required information for each of his loans. (Def.'s Exs. 4, 9.)  Both notices bear the signature of Plaintiff's name and are dated January 26, 2007.  (Id.)  Plaintiff gave deposition testimony that he signed the notice of right to cancel for the first deed of trust loan; however, he testified that the signature on the notice of right to cancel the home equity line of credit "could be" his.  (SUF ¶ 20.)  Based on this testimony, it can be inferred that the signatures on the notices to cancel are Plaintiff's and he received notices to cancel for both of his loans.  See Lynch, 588 F. Supp. 2d at 1258 (written acknowledgment is conclusive proof of delivery).  Therefore, Value's motion for summary judgment on Plaintiff's claims under TILA for failure to provide the notice of right to cancel is granted.

**3.   Plaintiff's Claim That He Did Not Understand the TILA Disclosures**

     Lastly, Value argues Plaintiff's contention that he did not understand the terms of the disclosure document or the right to cancel cannot give rise to a TILA claim.  Plaintiff has provided no authority suggesting that a lack of understanding can give rise to a claim under TILA.  Indeed, the case law and statute itself indicate that such a claim cannot be maintained.  See Lynch, 588 F. Supp. 2d at 1258 (dismissing plaintiff's TILA claim that lender's TILA disclosures for

1  two different loans were "confusing and unclear").  Therefore,

2  Defendant's motion for summary judgment on this claim is granted.

3  ### B.  Plaintiff's HOEPA Claim

4      Value argues it is also entitled to summary judgment on

5  Plaintiff's claim under HOEPA "because the undisputed facts show Value

6  did not violate HOEPA."[7]  Specifically, Value argues HOEPA does not

7  apply to either of Plaintiff's loans.  (Mot. for Summ. J. 11:2-3.)

8      HOEPA applies only to "a special class of regulated loans that

9  are made at higher interest rates or with excessive costs and fees."

10 Lynch, 588 F. Supp. at 1260(quotations and citations omitted).  "In

11 order to be subject to the protections afforded by HOEPA, one of two

12 factors has to be established.  Either the annual percentage rate of

13 the loan at consummation must exceed by more than [8] percent the

14 applicable yield on treasury securities, or the total points and fees

15 payable by the consumer at or before the closing has to be greater

16 than 8 percent of the total loan amount, or $400.00."  Lynch, 588 F.

17 Supp. 2d at 1260; see also 12 C.F.R. § 226.32(a)(1)(i)(stating that

18 the annual percentage rate may not exceed the yield on treasury

19 securities by more than "8 percentage points for first-lien loans, or

20 by more than 10 percentage points for subordinate lien loans.").

21     Value has demonstrated that neither the first deed of trust

22 loan's annual percentage rate nor the total points and fees payable

23 trigger application of HOEPA.  Under Federal Rule of Evidence 201,

24 judicial notice is taken sua sponte of the Federal Reserve Selected

25

26 _____

27     [7]  Value also argues Plaintiff abandoned his HOEPA claims at the
   July 28 hearing.  Although Plaintiff indicated at the hearing he was
28 unprepared to pursue his claim under HOEPA, his claim was not dismissed
   and will be addressed.

Interest Rates for December 15, 2006.[8]  On December 15, 2006, the yield on treasury securities was 4.72 percent.  For HOEPA to apply, the annual percentage rate on Plaintiff's first deed of trust loan would have to exceed 12.72 percent.  However, the annual percentage rate on Plaintiff's first deed of trust loan was only 11.64 percent. (Def.'s Ex. 5.)  To trigger HOEPA under the costs and fees prong, Plaintiff's fees and costs would have to exceed $12,400 - eight percent of the face value of the loan of $155,000.  However, Plaintiff's fees and costs totaled only $8,725.  (Def.'s Ex. 10.) HOEPA's additional regulations, therefore, do not apply to Plaintiff's first deed of trust loan.  Further, HOEPA does not apply to "open-end credit" transactions, including Plaintiff's home equity line of credit.  12 C.F.R. § 226.32(a)(2)(iii).  Therefore, Plaintiff cannot prevail on his HOEPA claims and Value's motion for summary judgment on these claims is granted.

### IV.  CONCLUSION

For the stated reasons, Value's motion for summary judgment is GRANTED.

Dated:  January 11, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge

---

[8]  Value requested that judicial notice be taken of Federal Reserve Selected Interest Rates for December 26, 2006.  However, under the statute, December 15, 2006 is the relevant date.  See 15 U.S.C. § 1602(aa)(1)(A)(stating the yield on treasury securities is measured on "the *fifteenth* day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.")(emphasis added).  Accordingly, Value's request for judicial notice is denied.